Earl Artis and Oda Bell Artis v. Commissioner.
Artis v. Commissioner
Docket No. 50188.
United States Tax Court
T.C. Memo 1961-92; 1961 Tax Ct. Memo LEXIS 247; 20 T.C.M. (CCH) 415; T.C.M. (RIA) 61092; March 31, 1961
*247 Held, the joint returns filed by petitioners for the years 1948, 1949, and 1950 were false and fraudulent and part of the deficiency in petitioners' income tax for each of the years 1948, 1949, and 1950 is due to fraud with intent to evade tax. Stanley E. Jennings, Esq., for the respondent. BLACK
Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in income tax and additions to tax under sections 293(b) and 294(d)(2), Internal Revenue Code of 1939, [1] as follows: Additions to Tax
Year
Amount
Sec. 293(b)
Sec. 294(d)(2)
1948
$34,393.90
$17,196.95
$3,261.30
1949
43,690.28
21,845.14
3,335.24
1950
18,673.36
9,336.68
1,867.54
*248 The petitioners defaulted in their appearances and on motion of respondent for judgment for failure to prosecute the petition, the Court granted the motion with respect to the deficiencies in income tax and the additions thereto under section 294(d)(2), as set out above and in the statutory notice. As to the additions to tax under section 293(b), respondent recognized that the burden of proof is on him. In recognition of this fact, respondent introduced considerable evidence, oral and documentary, in support of his determination of additions to tax under section 293(b). Petitioners introduced no evidence. Findings of Fact Petitioners Earl Artis and Oda Bell Artis are husband and wife and reside in Xenia, Ohio. Their joint returns for the years 1948, 1949, and 1950 were filed with the now district director of internal revenue for the Cincinnati, Ohio, district. Earl Artis will hereinafter be referred to as petitioner. During the years herein involved petitioner was engaged in the illegal "numbers game" gambling business. During January and February 1948 he operated as a sole proprietor and for the balance of 1948 he joined with Leland Rice in a partnership to carry on the gambling *249 enterprise in which petitioner was to receive two-thirds of the proceeds and Rice one-third of the proceeds. In 1949 and 1950, petitioner and Rice continued the illegal gambling business as a partnership, each to share equally in the proceeds. The numbers game is operated by a "house" which receives bets placed with "writers" and delivered to the house through "pickup men" and "runners." Bets are placed with the writers at numerous locations on a number, usually based on the reported daily transactions of the New York Stock Exchange. Odds given the players run 500 to 600 to 1. Thus, a 5 cent bet might return a player $25. Such a win is termed a "hit." Each writer deducts a commission, usually 25 percent from the bets received by him and turns the proceeds over to a pickup man. The pickup man in turn delivers the bets to the house, less a commission, usually around 10 percent. Thus, of each dollar bet the house will receive about 65 cents. This figure is termed the "net low." In order to protect themselves against heavy hits on particular numbers, the house will sometimes place a bet against such a contingency with another numbers house or individual. This is termed "overlay" or "layoff. *250 " The house operators are responsible for paying out the hits through the pickup men or runners to the writers and thence to the winning players. The primary records of the Artis-Rice gambling activity were destroyed after 2 or 3 days, since they were afraid such records would fall into the hands of the local law enforcement officers and be used against them. Most of the runners and pickup men also did not retain records. The operators did keep daily report sheets prepared from the primary records. These sheets had a column for the symbols identifying various runners and pickup men and others with whom the gamblers did business. Another column recorded the "net low" money received from wagers and a third column recorded the hits paid out. Amounts for travel and other expenses paid to runners and pickup men were also shown on the daily report. An internal revenue agent working with a special agent made an investigation of the tax liabilities of petitioners commencing in June 1951 and extending until May 1953. As a result of this investigation a criminal income tax case was made and petitioner was indicted for attempting to evade and defeat his and his wife's income tax for the years *251 1948, 1949, and 1950, in violation of section 145(b). A jury trial was had in the United States District Court, Southern District of Ohio, Western Division (Cr. No. 3066), and upon his plea of not guilty, petitioner was convicted on February 2, 1956, on two counts for the years 1949 and 1950. He was sentenced to serve 5 years on each count, the sentences to run concurrently, and fined $5,000 on each count for a total fine of $10,000. The conviction was affirmed on appeal, Artis v. United States, 238 F. 2d 237 (C.A. 6, 1956), certiorari denied 352 U.S. 1001 (1957). In examining the records kept by petitioner and Rice, the agents found them to be inadequate so far as reflecting the true income of the gambling operation. The agents also found that the records contained fictitious entries of hits in substantial amounts for each of the years concerned. They found that there was no partnership bank account and no substantiation for the payments set out in the daily report sheets, no accounting of the cash in the partnership venture or of its assets, and no accounting for capital or assets accounts. Neither could the agents identify and trace the partnership withdrawals. *252 Most of the transactions of the illegal gambling business were carried on in cash and the agents could not verify or trace these transactions adequately. They, therefore, used the net worth and cash expenditures method to compute the correct income and tax liabilities of the petitioners. The revenue agents prepared a net worth plus cash expenditures computation, which is the same as that alleged by the respondent in his answer. The correct net income as found by the agents and approved by the Commissioner compared to the figures reported by the petitioners in their returns is as follows: Net Income
Year
Reported
Corrected
1948
$62,263.34
$118,442.29
1949
54,028.93
125,601.43
1950
47,745.50
80,042.96
Before preparing the net worth computation the agents asked petitioner to furnish a net worth statement showing the balances at the close of 1947, 1948, 1949, and 1950. Petitioner did furnish such a statement and the cash on hand shown by him was used by the agents in their computation. They verified other items in the net worth computation through third party records and from public records. Living expenses were verified through an analysis of personal *253 checking accounts, vendors' records, and by statements of petitioner. Estimated items in the net worth computation were discussed with petitioner and he stated that they were fair and conservative. The net worth items were discussed with petitioner on April 21, 1953, and he was invited to make any corrections or changes that he thought warranted. At that time he made no corrections or changes. The agents found living expenses for 1948 totaled $28,196.66, while the net income reported was $62,263.34; for 1949, living expenses were found to be $58,298.59, while the reported net income was only $54,028.93; and for 1950, living expenses were found to be $48,498.74, again larger than the reported net income of $47,745.50. The following, as found by respondent's revenue agent and adopted by the Commissioner, is a statement of the petitioners' assets and liabilities as of December 31, 1947, through 1950, the petitioners' nondeductible expenditures and personal living expenses, and the taxable income as computed by the net worth cash expenditures method for the years 1948, 1949, and 1950: 12-31-47
12-31-48
12-31-49
12-31-50
ASSETS: Cash on Hand
$15,000.00
$ 9,000.00
$ 6,000.00
$ 3,000.00
Bank Accounts
6,467.71
36,083.69
22,992.89
31,719.19
Real Estate
23,291.88
23,691.88
47,950.30
59,950.30
Notes or Loans Receivable
8,500.00
7,985.00
Securities
12,703.23
28,647.47
46,931.80
50,380.18
Automobiles
2,186.27
9,813.11
13,884.31
11,415.05
Office Equipment
3,636.35
4,214.57
4,560.81
6,312.69
TOTAL ASSETS
$63,285.44
$111,450.72
$150,820.11
$170,762.41
LIABILITIES: Notes and Mortgages Payable
$15,500.00
$ 987.80
$ 1,134.74
$ 8,844.98
Reserve for Depreciation
2,040.79
2,675.22
4,599.98
6,441.80
TOTAL LIABILITIES
$17,540.79
$ 3,663.02
$ 5,734.72
$ 15,286.78
NET WORTH:
$45,744.65
$107,787.70
$145,085.39
$155,475.63
Less: Previous Year's Net
Worth
45,744.65
107,787.70
145,085.39
Increase
$ 62,043.05
$ 37,297.69
$ 10,390.24
Add: Personal and Living Expenses
28,196.66
58,298.59
48,498.74
Add: Nondeductible Cash Payments Per
Records
29,700.92
33,067.33
22,762.25
Adjusted Gross Income
$119,940.63
$128,663.61
$ 81,651.23
*254 Petitioner's books and records are incomplete and inaccurate as to all the taxable years involved, and they are insufficient to truly reflect the income of the petitioners for the years 1948, 1949, and 1950. During each of the years 1948, 1949, and 1950, petitioner engaged in an illicit numbers game gambling business. Petitioners filed false and fraudulent income tax returns for each of the years 1948, 1949, and 1950. At least part of the deficiency in income tax for each of the years 1948, 1949, and 1950 is due to fraud with intent to evade tax. Opinion BLACK, Judge: The only issue we have for decision in this case is: Whether petitioners are liable for additions to tax under section 293(b) for the years 1948, 1949, and 1950. As has already been stated, petitioners do not contest the deficiencies in tax or additions thereto under section 294(d)(2). On the issue we have for decision, we have endeavored to make full findings of fact based on the evidence, both oral and documentary, which was received at the hearing. At the conclusion of these Findings of Fact we have found: Petitioners filed false and fraudulent income tax returns for each of the years 1948, 1949, and *255 1950. At least part of the deficiency in income tax for each of the years 1948, 1949, and 1950 is due to fraud with intent to evade tax. The findings of fact to which we have just referred are dispositive of the only issue we have in the case. The evidence shows a consistent pattern of understatement of a large amount of income each year and supports an inference of fraud and willful evasion of their income tax. See Holland v. United States, 348 U.S. 121 (1954); Schwarzkopf v. Commissioner, 246 F. 2d 731 (C.A. 3, 1957), affirming in part T.C. Memo. 1956-155. Petitioners have offered no explanation or any defense as to the substantial understatements of income from the illegal business, and it would not be reasonable for us to assume that the income shown to have been received but unreported was unknown to them. The failure to offer any excuse for the omission of such income is a factor bearing on their intent. Richards v. Commissioner, 111 F. 2d 378 (C.A. 5, 1940); Rogers v. Commissioner, 111 F. 2d 987 (C.A. 6, 1940). The conviction of petitioner on the indictment for the criminal evasion of his and his wife's income *256 taxes for the years 1949 and 1950 is a strong indication of fraud, Meyer J. Safra, 30 T.C. 1026 (1958), and tends to show motive and intent in the prior year 1948. Where joint returns are filed by a husband and wife, the liability for taxes and additions for fraud are joint and several. Myrna S. Howell, 10 T.C. 859 (1948), affd. 175 F. 2d 240 (C.A. 6, 1949). Taken on the record as a whole, there are ample indicia of fraud to sustain the additions to tax under section 293(b). Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1939, as amended.↩