Sam Steinberg and Rose Steinberg v. Commissioner.
Steinberg v. Commissioner
Docket No. 83549.
United States Tax Court
T.C. Memo 1962-108; 1962 Tax Ct. Memo LEXIS 202; 21 T.C.M. (CCH) 593; T.C.M. (RIA) 62108; May 2, 1962
*202 1. Held, that part of the deficiency for each taxable year is due to fraud with intent to evade tax within the meaning of section 293(b), I.R.C. 1939. Additions to tax under said section approved. 2. Held, that petitioners' failure to file a return for 1948 was not due to reasonable cause. Addition to tax for said failure, imposed under section 291(a), is approved. 3. Held, that an addition to tax under section 294(d)(1)(A) for failure to file declarations of estimated tax for all taxable years involved except 1952, and also an addition to tax for 1952 under section 294(d)(2) for substantial underestimate of estimated tax, approved. 4. Held, that the return for each of the years 1949 through 1953 was false or fraudulent with intent to evade tax, within the meaning of section 276(a). Accordingly assessment of the deficiencies and additions to tax for each of the years 1949, 1950 and 1951, is not barred by limitation. Lawrence McTurnan, Esq., and George M. Mott, Esq., Hume Mansur Bldg., Indianapolis, Ind., for the petitioners. Conley G. Wilkerson, Esq., for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: The respondent determined deficiencies and additions *203 to tax against the petitioners, for calendar years and in amounts, as follows: [1]
Additions to Tax
Sec.
Sec.
Year
Deficiency
Sec. 293(b)
Sec. 291(a)
294(d)(1)(A)
294(d)(2)
1948
$1,873.88
$ 936.94
$468.47
$168.66
$112.43
1949
3,445.32
1,722.66
310.07
206.72
1950
1,736.58
868.29
160.07
106.71
1951
1,319.24
659.62
115.42
76.95
1952
1,406.19
703.09
79.18
1953
2,922.03
1,461.02
301.62
201.08
The issues presented for decision are: (1) Is at least a part of the deficiency in income tax for each of the taxable years due to fraud with intent to evade tax, within the meaning of section 293(b)? (2) Was petitioners' failure to file any return for the taxable year 1948 due to reasonable cause and not due to willful neglect, within the meaning of section 291(a)? (3) Was petitioners' failure to file a declaration of estimated tax for any of the taxable years here involved except 1952, due to reasonable cause and not due to willful neglect, within the meaning of section 294(d)(1)(A)? (4) Are the petitioners liable for an addition to tax for the year 1952, under section 294(d)(2), for substantial underestimate of estimated tax? (5) Is assessment *204 of the deficiencies in income tax and of any additions to tax for the years 1949, 1950 and 1951, barred by the statute of limitation contained in section 275(a)? The parties have agreed in their written stipulation of facts that the computation of net income by the net worth method, as set forth in the statement attached to the respondent's answer, is "true and correct" with two exceptions mentioned in paragraph 2 of said stipulation. Accordingly, the deficiencies in income tax determined by the respondent through his use of the net worth method, as modified to give effect to the above-mentioned exceptions, are no longer in issue. Petitioners have now conceded that assessments of any deficiencies or additions to tax for the taxable years 1948, 1952 and 1953, are not barred by limitation. The respondent has now conceded that the petitioners are not liable for additions to tax under section 294(d)(2), for any of the taxable years except 1952. Findings of Fact Some of the facts were stipulated. The stipulation of facts, together with the exhibits identified therein, is incorporated herein by reference. The petitioners, Sam and Rose Steinberg, are husband and wife; and they reside in Indianapolis, *205 Indiana. Their income tax return for each of the calendar years 1949 through 1953 was filed with the collector or director of internal revenue at Indianapolis. They filed no return, either individually or jointly, for the year 1948. The term "petitioner" in the singular, as used herein, will have reference to Sam Steinberg. Petitioner was born of immigrant parents in New Jersey in 1899. During the taxable years here involved, he was from 48 to 54 years of age. He was compelled to leave school at the end of the sixth grade, so that he could go to work and help provide for his mother. For approximately 15 years after leaving school, petitioner was employed by various retail stores in the capacity of stock clerk or sales clerk. From about 1927 to 1937, he operated, one after another, various neighborhood grocery stores in the Indianapolis area. In 1937 he purchased a house and lot at 21st and Martindale, in Indianapolis; and during the next 4 years, he operated on these premises, a junk and scrap iron business. He discontinued this junk business in about 1941; and he then entered into a partnership with his brother-in-law, Joseph Smith, for the operation of a neighborhood tavern in Indianapolis. *206 For the next 4 years, until about 1945, petitioner and Smith operated said tavern; and in the last mentioned year, they acquired another tavern which they operated, apparently until 1946 or 1947. In about 1946 or 1947, petitioner and Smith formed another partnership to operate a pawn shop, known as the S and S Loan Company, in Anderson, Indiana, which is a town located about 33 miles from Indianapolis. They continued to operate this pawn shop business as equal partners, until about the end of 1951 when Smith withdrew therefrom. In 1952 and 1953 petitioner operated said pawn shop business as a sole proprietor. The following table shows the amount of petitioner's share of the partnership income of the S and S Loan Company for each of the years 1949, 1950 and 1951, as reported by him on his income tax returns; and also the amount of his income as a sole proprietor of said business for the years 1952 and 1953, as reported on his returns for those years: Year
Income reported
1949
$1,217.89 *
1950
2,080.06 *
1951
1,963.75 *
1952
1,224.48 **
1953
1,526.59 **
In addition to petitioner's activities as partner and proprietor of S and S *207 Loan Company, he owned or had an interest in at least two rental properties in Indianapolis, throughout the taxable years. The first of these was a commercial property located at 21st and Martindale, where petitioner had formerly operated his junk business. On this property, petitioner erected a new building in about 1946 or 1947, which he has at all times since leased to a company known as Production Plating, Inc. Petitioners and respondent have stipulated that the following rental payments were received by petitioners from Production Plating, Inc., during the following taxable years: Year
Rental received
1948
$2,520
1949
2,520
1950
2,760
1951
2,760
1952
2,760
1953
2,760
In petitioners' returns for the years 1949 through 1953, they did not report any of the foregoing rental payments; and as hereinabove found, they did not file any return for the year 1948. The second of the above-mentioned rental properties from which petitioner derived income during the taxable years, was an 8-unit frame apartment building located on Balsam Avenue in Indianapolis. This building was owned in equal shares by petitioner and his above-mentioned brother-in-law, Joseph Smith; and it was acquired by them in 1947. Petitioner *208 reported on his income tax returns, the following amounts as his share of the net rentals (after expenses) from said Balsam Avenue apartment: Share of
Year
net rentals
1949
$350.61
1950
855.62
1951
622.40
1952
874.49
1953
448.34 Petitioner also had other sources of income during the taxable years. Among such additional sources of income was the construction and sale of residential houses. The following table shows as to each such house: (1) The address; (2) the year when built; (3) the amount of petitioner's total investment therein; and (4) the year when sold: Year
Petitioner's
Year
Address *
built
Investment
sold
1. 5634 Carollton
1949
$14,320
1950
2. 6036 Riverview Drive
1950
19,900
1951
3. 7520 North Pennsylvania
1951
30,900
1953
4. 8120 Broadway
1953
Not shown
1953
5. 8110 Broadway
1953
21,000
1954
6. 562 East 81st Street
1953
18,000
1954
The record does not reveal the sale prices received by petitioner for these houses. Petitioners did not report for income tax purposes, any of the sales of properties numbered 1 through 4 in the above table. [2] *209 They did report however, gains from the sales of the properties numbered 5 and 6 on their 1954 return which was filed shortly after the respondent's agents began investigation of petitioners' tax returns for the preceding years here involved. Petitioner, in addition to the sales of houses which he had constructed, sold in 1952 a one-third interest in certain unimproved lots located at 38th and Ruckle Streets in Indianapolis. He did not report this transaction on any income tax return. The petitioners and the respondent have stipulated that the following computation of net income by the net worth method is true and correct: [3]
Computation of Net Income by Net Worth Method
December
December
December
December
31, 1947
31, 1948
31, 1949
31, 1950
ASSETS: Bank Accounts: Merchants National Bank,
$ 808.48
Checking Account
Merchants National Bank,
$ 4.44
$ 4.44
$ 4.44
4.44
Saving #7627
Merchants National Bank,
19.91
Mass. Ave., Checking
Indianapolis Hebrew Credit
Union
Peoples State Bank, Savings
17.75
17.75
17.75
Acct. #3631 (Rose)
Union Federal Savings & Loan
#MR1367
Automobile
Pontiac
1,800.00
1,800.00
Capital Account, S and S Loan
5,537.90
7,583.33
5,681.21
4,641.27
Company
Accounts Receivable, L.
Schabler
Real Estate: 3843 Broadway
7,500.00
7,500.00
7,500.00
7,500.00
2104 Martindale
23,500.00
23,500.00
23,500.00
23,500.00
1 Business lot, 21st &
1,500.00
Martindale
8110 Broadway
562 East 81st Street
8120 Broadway
7520 North Penn
2,500.00
5634 Carrollton
1,500.00
14,320.00
7599 North Meridian
3546-48 Balsam Apt. Bldg.,
12,500.00
12,500.00
12,500.00
12,500.00
1/2 interest
3546-48 Balsam Apt. Bldg.,
Remodeling
Lots, 38th & Ruckle, 1/3
4,500.00
4,500.00
4,500.00
4,500.00
interest
6036 Riverview Drive
19,900.00
Castelton Property
Total Assets
$55,042.34
$57,105.52
$69,823.40
$77,691.85
Total Assets (brought
$55,042.34
$57,105.52
$69,823.40
$77,691.85
forward)
Less Liabilities and Reserves
20,085.90
21,898.20
20,611.41
21,063.58
Net Assets
$34,956.44
$35,207.22
$49,211.99
$56,628.27
Less Net Assets Preceding
34,956.44
35,207.22
49,211.99
Year End
Increase in Net Assets
$ 250.78
$14,004.77
$ 7,416.28
Add Personal Expenditures
including Federal Income Tax
Payments
7,514.66
5,514.66
5,174.66
Adjusted Gross Income revised
$ 7,765.44
$19,519.43
$12,590.94
Adjusted Gross Income
0
1,568.50
2,935.68
reported on return
Unreported Adjusted Gross
$ 7,765.44
$17,950.93
$ 9,655.26
Income
Less
LIABILITIES: Loans Payable
Peoples State Bank Loan Card
$ 2,000.00
$ 8,500.00
#1
Peoples State Bank Loan Card
0
#10851
Peoples State Bank Loan Card
2,562.50
0
#11907
Peoples State Bank Loan Card
$ 978.00
#1584A
Peoples State Bank Loan Card
#4640A
Peoples State Bank Rose Loan
264.00
Card #14088
Peoples State Bank Rose Loan
$ 220.00
Card #15640
Peoples State Bank Rose Loan
238.00
Card #16988
Peoples State Bank Rose Loan
Card #19655
Union Federal Savings & Loan
Loan Card #11438
Merchants National Bank
Accounts Payable
Spickelmier Supply Co.
Adams-Rogers Co.
Potter Coal and Material
Mortgages Payable
Indianapolis Life Insurance
12,000.00
Co.
Union Federal Savings and
9,800.00
Loan
Crown Hill Cemetery Assn.
9,436.00
7,324.93
5,125.22
2,619.95
United Christian Missionary
4,569.91
3,463.55
2,292.04
1,225.16
Society
Robert J. Wadsworth (2nd
Mortgage)
Equitable Life of Iowa
Northwestern Mutual Insurance
Co.
Northwestern Mutual Insurance
Co.
Mutual Benefit Life Insurance
Co.
Depreciation Reserve
1/2 Balsam Apartments
549.99
733.32
916.65
1,099.98
2104 Martindale
967.50
1,612.50
2,257.50
2,902.50
Total Liabilities and
$20,085.90
$21,898.30
$20,611.41
$21,063.58
Reserves
*210 Computation of Net Income by Net
Worth Method
December
December
December
31, 1951
31, 1952
31, 1953
ASSETS: Bank Accounts: Merchants National Bank,
$ 1,767.52
$ 3,939.41
$ 34.51
Checking Account
Merchants National Bank,
4.44
3.44
3.44
Saving #7627
Merchants National Bank,
18.91
17.91
16.91
Mass. Ave., Checking
Indianapolis Hebrew Credit
247.01
Union
Peoples State Bank, Savings
17.75
1,425.44
33.89
Acct. #3631 (Rose)
Union Federal Savings & Loan
82.22
#MR1367
Automobile
Pontiac
1,800.00
2,200.00
2,200.00
Capital Account, S and S Loan
6,735.02
12,879.53
11,286.12
Company
Accounts Receivable, L.
6,379.00
5,152.25
5,856.53
Schabler
Real Estate: 3843 Broadway
2104 Martindale
23,500.00
23,500.00
23,500.00
1 Business lot, 21st &
Martindale
8110 Broadway
1,833.33
21,000.00
562 East 81st Street
1,833.34
18,000.00
8120 Broadway
1,833.33
7520 North Penn
30,900.00
30,900.00
5634 Carrollton
7599 North Meridian
9,500.00
30,000.00
30,000.00
3546-48 Balsam Apt. Bldg.,
12,500.00
12,500.00
12,500.00
1/2 interest
3546-48 Balsam Apt. Bldg.,
6,840.00
6,840.00
6,840.00
Remodeling
Lots, 38th & Ruckle, 1/3
4,500.00
interest
6036 Riverview Drive
Castelton Property
9,750.00
Total Assets
$104,462.64
$134,857.98
$141,350.63
Total Assets (brought
$104,462.64
$134,857.98
$141,350.63
forward)
Less Liabilities and Reserves
43,626.30
72,981.33
69,147.57
Net Assets
$ 60,836.34
$ 61,876.65
$ 72,203.06
Less Net Assets Preceding
56,628.27
60,836.34
61,876.65
Year End
Increase in Net Assets
$ 4,208.07
$ 1,040.31
$ 10,326.41
Add Personal Expenditures
including Federal Income Tax
Payments
5,216.66
7,580.04
5,174.66
Adjusted Gross Income revised
$ 9,424.73
$ 8,620.35
$ 15,501.07
Adjusted Gross Income
2,586.15
2,098.97
3,974.93
reported on return
Unreported Adjusted Gross
$ 6,838.58
$ 6,521.38
$ 11,526.14
Income
3,000.00 *
$ 3,838.58
LIABILITIES: Loans Payable
Peoples State Bank Loan Card
#1
Peoples State Bank Loan Card
#10851
Peoples State Bank Loan Card
#11907
Peoples State Bank Loan Card
$ 318.00
0
#1584A
Peoples State Bank Loan Card
$ 587.50
#4640A
Peoples State Bank Rose Loan
Card #14088
Peoples State Bank Rose Loan
Card #15640
Peoples State Bank Rose Loan
Card #16988
Peoples State Bank Rose Loan
408.00
Card #19655
Union Federal Savings & Loan
$ 3,237.32
Loan Card #11438
Merchants National Bank
10,000.00
20,000.00
0
Accounts Payable
Spickelmier Supply Co.
4.45
Adams-Rogers Co.
14.24
Potter Coal and Material
Mortgages Payable
Indianapolis Life Insurance
Co.
Union Federal Savings and
Loan
Crown Hill Cemetery Assn.
United Christian Missionary
8,065.04
7,396.96
6,556.44
Society
Robert J. Wadsworth (2nd
3,466.34
Mortgage)
Equitable Life of Iowa
20,000.00
19,400.00
Northwestern Mutual Insurance
14,000.00
Co.
Northwestern Mutual Insurance
16,000.00
Co.
Mutual Benefit Life Insurance
20,000.00
19,323.49
Co.
Depreciation Reserve
1/2 Balsam Apartments
1,283.31
1,466.64
1,649.97
2104 Martindale
3,547.50
4,192.50
4,837.50
Total Liabilities and
$ 43,626.30
$ 72,981.33
$ 69,147.57
Reserves
*211 The following table shows: (1) The amount of petitioners' adjusted gross income as reported on their income tax return for each of the years 1949 through 1953; (2) the stipulated amount of their "adjusted gross income revised" (as shown in the above net worth computation), for each of the years 1948 through 1953; and (3) the amount of the understatement of adjusted gross income for each year: Adjusted gross
Adjusted gross income
Understatement of
income per
per net worth
adjusted gross
Year
return
computation
income
1948
*
$ 7,765.44
$ 7,765.44
1949
$ 1,568.50
19,519.43
17,950.93
1950
2,935.68
12,590.94
9,655.26
1951
2,586.15
9,424.73
6,838.58
1952
2,098.97
8,620.35
6,521.38
1953
3,974.93
15,501.07
11,526.14
Totals
$13,164.23
$73,421.96
$60,257.73
The following table shows: (1) Petitioners' adjusted gross income as reported on their income tax return for each of the years 1949 through 1953; and (2) the stipulated amount of their personal living *212 expenditures (as shown in the agreed net worth computation) for each of the years 1948 through 1953: Adjusted gross
Personal living
income per
expenditures
Year
return
as stipulated
1948
$7,514.66
1949
$1,568.50
5,514.66
1950
2,935.68
5,174.66
1951
2,586.15
5,216.66
1952
2,098.97
7,580.04
1953
3,974.93
5,174.66
During the course of respondent's investigation of petitioners' tax returns for the years here involved, petitioner Sam Steinberg gave misleading and untruthful answers to several inquiries made by respondent's investigating agents. In response to a question as to whether he had sold any real estate in 1952 or 1953, petitioner stated that he had not. However, as hereinabove found, petitioner did sell in 1952 his interest in the unimproved real estate at 38th and Ruckle Streets; and in 1953, he sold the houses at 7520 North Pennsylvania and at 8120 Broadway. Upon petitioner being confronted by one of the investigating agents with evidence of these sales, he admitted that he had sold these properties. Also, when the investigating agent asked petitioner for a list of all real properties which he had owned during the taxable years, petitioner supplied an incomplete list which did not include either: (1) *213 The rental commercial property at 21st and Martindale, from which petitioner was at the time receiving rent of more than $2,700 per year; or (2) any of the four properties on which petitioner had built the above-mentioned houses that he had sold during the taxable years 1950, 1951 and 1953. Petitioner did not file a declaration of estimated tax for any of the taxable years 1949 through 1951, or for the taxable year 1953. However, petitioner did file a declaration of estimated tax for 1952, whereon he estimated his tax for said year at $50; whereas his tax liability for said year (exclusive of self-employment tax), as determined by respondent and not here in dispute, was $1,369.74. Ultimate Facts The deficiency for each of the taxable years involved was due, at least in part, to fraud with intent to evade tax. Petitioners' failure to file an income tax return for the year 1948 was not due to reasonable cause. Petitioners' return for each of the years 1949, 1950 and 1951, was false or fraudulent with intent to evade tax. Opinion 1. The principal question presented in this case is whether the admitted deficiency for each of the taxable years 1948 through 1953, is due, at least in part, *214 to fraud with intent to evade tax within the meaning of section 293(b) of the 1939 Code. Such question is one of fact. The respondent has the burden of establishing fraud by clear and convincing evidence. Section 1112. We are convinced, after seeing and hearing the witnesses, and after considering and weighing all the evidence herein, that respondent has fully sustained his said burden. Accordingly, we have hereinbefore made a finding of ultimate fact to that effect. The evidence herein reveals that, beginning in 1948 and continuing through the year 1953, petitioner either failed to file a return or understated his taxable income for every year. Such understatements were substantial in amount, ranging from about $6,800 to almost $18,000 per year; whereas the amounts of adjusted gross income which petitioners reported for these same years ranged only from $1,500 to $4,000. Moreover, the stipulated amount of petitioners' personal living expenses for each of the years 1949 through 1953 was, as we have hereinbefore found, substantially in excess of the amounts of their reported adjusted gross income for each such year. We are convinced that each of the abovementioned understatements of *215 taxable income was due, not to mere innocent mistakes or oversight, but rather to willful fraud, motivated by an intent to evade taxes. It has been judicially recognized that "a consistent pattern of underreporting large amounts of income" is, in itself, evidence of a fraudulent intent. See Holland v. United States, 348 U.S. 121; Schwarzkopf v. Commissioner, (C.A. 3), 246 F. 2d 731; and Epstein v. United States, (C.A. 6) 246 F. 2d 563, certiorari denied 355 U.S. 868. We are impressed also by the fact that petitioners failed to return for taxation in each of the years involved, certain specific transactions. For example, although they ranging from more than $2,500 to $2,700 per year on the commercial property at 21st and Martindale, they did not report any of the same. Also, they did not report any of the principal petitioner's real estate sales transactions, including either his sales of vacant lots, or his sales of the houses which he built. We are persuaded that petitioner's uncorroborated testimony, wherein he attempted to make explanations for these omissions, is not worthy of belief. We regard as noteworthy also, the false and misleading answers which petitioner gave the investigating *216 agents - some of which misleading statements have been recounted in our Findings of Fact. This type fo conduct likewise5 has been held to be indicative of fraudulent intent. See Abraham Galant, 26 T.C. 354, 365, and Madeline v. Smith 32 T.C. 985, 987. Notwithstanding that petitioner had only a limited amount of formal education, he had been engaged since 1927 in numerous business enterprises, and we are convinced after seeing and hearing him testify, that he was an intelligent businessman who must have been aware of the amounts of income which he derived during the taxable years. We hold, consonant with our ultimate finding of fact on this point, that at least part of the deficiency for each of the taxable years here involved, was due to fraud with intent to evade tax, within the meaning of section 293(b). We approve respondent's action in imposing an addition to tax for fraud under said section, for each of said years. 2. We turn next to the addition to tax determined under section 291(a), for petitioners' failure to file any return for the year 1948. Notwithstanding that petitioners admitted in their pleadings that no return was filed for 1948, the principal petitioner testified *217 at the trial that he was "pretty positive" that he had filed such return. Such testimony, however, was not convincing; and we are satisfied, after considering both the said admission in the pleadings, and also the evidence on this point which was adduced by the respondent, that petitioner did not file any return for 1948; and that such failure was not due to reasonable cause. We approve the respondent's determination under section 291(a) for the failure to file a return for 1948. 3. As to the additions to tax imposed under section 294(d)(1)(A), for failure to file declarations of estimated tax for any of the taxable years except 1952, the petitioners offered no testimony or other evidence to explain such failure. We therefore sustain the respondent's action in imposing such additions to tax. Concerning the addition to tax imposed under section 294(d)(2) for substantial underestimation of estimated tax for the year 1952, that section provides for the imposition of such an addition to tax if 80 percent of the correct tax exceeds the amount of the tax estimated by the taxpayer on his declaration. Reasonable cause is no defense under this section of the statute. H. R. Smith, 20 T.C. 663. *218 We have hereinbefore found as a fact that petitioners estimated their 1952 tax at only $50; whereas 80 percent of their corrected tax liability is over $1,000. Accordingly, we approve the respondent's imposition of the addition to tax for 1952 under section 294(d)(2). 4. There remains the question of whether assessment of the deficiency in tax and the additions to tax for each of the years 1949, 1950 and 1951, is barred by limitation. [4]
Section 276(a) provide that in the case of a false or fraudulent return with intent to evade tax, the tax may be assessed at any time. We have hereinbefore found as an ultimate fact that the return filed by the petitioners for each of said years 1949, 1950 and 1951, was false or fraudulent with intent to evade tax. Accordingly, we hold that assessment of deficiencies and additions to tax for each of these years is not barred by limitation. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1939, unless otherwise specified.↩
*. Partner's 50 percent share of profits. ↩
**. Sole proprietor's profits.↩
*. All addresses are in Indianapolis.↩
2. Petitioner testified at the trial that the houses numbered 1, 2 and 3 in the above table actually were built by, and belonged to, his son-in-law, Louis Schabler; and that he (petitioner) held only bare legal title thereto. Such testimony, which was not corroborated, is contrary to the net worth computation reproduced infra, which includes said properties among petitioner's assets and which has been stipulated to be "true and correct." We have, after seeing and hearing petitioner testify, and also after considering statements which he made to the investigating agents, rejected his testimony in regard to said three properties, as not being credible.
3. This computation contains the adjustments which the parties stipulated were required to be made therein. See paragraph 2 of the stipulation of facts.↩
*. To allow for nontaxable gain on sale of personal residence. ↩
*. Petitioners, as hereinbefore found, did not file a return for 1948.↩
4. As mentioned in our preliminary statement herein, the parties are in agreement that any assessments for the years 1948, 1952 and 1953, are not barred by limitation.↩