Jacob S. List and Helen List v. Commissioner.
List v. Commissioner
Docket No. 2689-65.
United States Tax Court
T.C. Memo 1967-148; 1967 Tax Ct. Memo LEXIS 111; 26 T.C.M. (CCH) 683; T.C.M. (RIA) 67148; July 11, 1967
*111 Leonard Bailin, 1472 Broadway, New York, N. Y., for the petitioners. William F. Chapman and Richard E. Ingram, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined the following deficiencies and additions to tax: Additions to Tax,
Income Tax
$ 6653(b),
Year
Deficiency
I.R.C. 1954
1956
$4,058.15
$2,029.08
1957
4,786.29
2,393.15
1958
6,393.86
3,196.93
1959
6,468.47
3,234.24
The issues are (1) whether petitioners failed to report certain fees received by them in each of the years 1956 through 1959; (2) whether respondent properly disallowed certain business expenses claimed by petitioners in each of the years 1956 through 1959; (3) whether petitioners are entitled to a dependency exemption for their son, Danny List, in 1956; (4) whether any part of the underpayment of tax in each of the years 1956 through 1959 was due to fraud within the meaning of section 6653(b) of the 1954 I.R.C.; [1] and (5) whether any of the years 1956 through 1959 is barred by the statute of limitations. Findings of Fact Some of the facts were stipulated and they are so found. Jacob S. List and *112 Helen List, husband and wife, are residents of New York, New York. They filed joint income tax returns for the years 1956 through 1959 with the district director of internal revenue, Manhattan District, New York. Jacob S. List, who will be referred to as petitioner, was engaged in the practice of psychotherapy and educational guidance during the years 1956 through 1959 and maintained an office in New York City for such practice. His wife Helen was employed by George Jensen, Inc. in New York City during the years 1956 through 1958 and received compensation in the respective amounts of $2,532.50, $2,676.50 and $2,199.45. During the years 1956 through 1959, petitioner received income from his practice as a psychotherapist and as an educational guidance counselor and also from his fee splitting arrangements with several therapists-in-training working in his office. The usual fee paid by patients was $10 per hour or for a session, although arrangements for payments at different rates were sometimes made. Payments were made both by check and in cash. Petitioner received the following professional fees from some 28 patients during the years 1956 through 1959: Patient
1956
1957
1958
1959
Sheldon Karlstein
$ 80
$ 300
$ 300
$ 150
Enis Post
660
660
660
660
Gladys Brunner
1,080
1,080
1,080
400
Milton Filene
100
Gerald Rosenberger
530
Gizella R. Schwartz
20
600
800
Jesse Teiko
170
Anne Steinman
1,300
1,300
1,170
Malvin Gelof
4,100
3,500
2,550
Patricia Dvonch
$ 340
$ 540
$ 600
$ 700
Frederick Dvonch
300
Madeline Davis
1,200
1,200
1,200
1,200
David Woodman
80
120
Nathan Luxenberg
140
20
Eleanor Messing
1,500
1,500
1,500
1,200
Arthur Messing
1,200
1,200
1,200
1,200
Daniel Davis
1,200
1,200
1,200
1,200
Lee Rosenberger
930
Samuel Weiss
240
900
825
Lillian Heifetz
350
Daniel Greene
605
Mara Dvonch
750
Louis Gillman
80
Vivian Miller
210
210
210
Mrs. Sam Dort
430
230
480
480
James Weinraub
480
1,000
1,000
1,000
Teresa Lawrence
520
880
960
80
Irwin Richland
130
440
160
$14,360
$17,080
$15,850
$12,480
*113 The therapists-in-training who worked in petitioner's office at various times during the years 1956 through 1959 included Annette Kaminsky, Enis Post, Eleanor Messing and Madeline Davis. They made appointments with patients, and all fees paid to the therapists-in-training by their patients were split with petitioner on a 50-50 basis, except in the case of Madeline Davis who, during 1958, only retained $2 out of every $10 fee paid to her. The following schedule shows the petitioner's share of the fees received by him from the therapists-in-training under the fee-splitting arrangements during the years 1956 through 1959: 1956
1957
1958
1959
Annette Kaminsky
$1,500
$2,000.00
$2,500
$ 4,500
Enis Post
5,560
Madeline Davis
1,372
960
Eleanor Messing
150
337.50
$1,650
$2,337.50
$3,872
$11,020
Petitioner received interest from savings accounts in the years 1956, 1957 and 1958 in the respective amounts of $1,153.58, $1,273.60 and $1,353.04. Petitioner did not report any interest income in the joint Federal income tax returns filed by him and his wife for the years 1956, 1957 and 1958. On October 16, 1963, in the United States District Court for the Southern District of New York, Jacob S. List pleaded guilty to charges *114 of wilfully and unlawfully attempting to evade and defeat income taxes due and owing for the years 1958 and 1959 (counts 3 and 4 of the indictment). On November 27, 1963, the Court entered judgment of guilt and conviction on counts 3 and 4 (years 1958 and 1959) and imposed a sentence of six months on count 3 (which was suspended) and a fine of $3,500 on count 4. Counts 1 and 2, involving the years 1956 and 1957 were dismissed. Petitioner reported the following income from his practice of psychotherapy during the years 1956 through 1959: Total
Net
Year
Income
Expenses
Income
1956
$2,580.98
$ 886.41
$1,694.57
1957
3,175.00
855.00
2,320.00
1958
3,200.00
850.00
2,350.00
1959
7,500.00
2,525.00
4,975.00
Respondent determined that petitioner understated gross receipts from fees and interest income in the following amounts: 1956
1957
1958
1959
Gross receipts from fees
$16,615.00
$19,185.00
$23,570.00
$26,809.00
Less amount reported
2,580.98
3,175.00
3,200.00
7,500.00
Balance
14,034.02
16,010.00
20,370.00
19,309.00
Interest
1,153.58
1,273.60
1,353.04
(123.61) *
Understatement
$15,187.60
$17,283.60
$21,723.04
$19,185.39
Respondent also disallowed, for lack of *115 substantiation, the following business expenses claimed by petitioner on his returns: 1956
1957
1958
1959
Lunches $150
$ 60
Other entertaining
120 $175 $350
Rent
1,500 *
Gifts & gratuities
100
Respondent also disallowed an exemption deduction claimed by petitioner in 1956 for his son Danny List. A part of the underpayment of tax for each of the years 1956 through 1959 was due to fraud. The joint returns filed by Jacob S. List and his wife for the years 1956 through 1959 were false and fraudulent with intent to evade tax. Opinion Petitioner conducted an active practice of psychotherapy and educational guidance during the years 1956 through 1959 and maintained a large office for that purpose. There is some indication in the record that the office was maintained under the name of the Institute of Applied Psychology. Respondent established the petitioner's unreported income in the years 1956 through 1959 through evidence of payments made to petitioner in his practice of psychotherapy and educational guidance and through evidence of payments made *116 to him by several therapists who worked in his office under a fee-splitting arrangement. The evidence shows that petitioner received professional fees from at least 28 patients during the year 1956 through 1959 in the respective amounts of $14,360, $17,080, $15,850 and $12,480, and we have so found. As to several of the patients, petitioner readily conceded at the trial that he received payments from them in specified amounts for professional services. More than 20 of the patients, however, appeared at the trial and testified that they made payments to petitioner for professional services during the period 1956 through 1959 either in cash or by check. Many of the checks, generally made out either to cash or payable to petitioner, were introduced into evidence. In the rare instance that a check was made payable to the Institute of Applied Psychology the evidence by the patient is clear that the payment was to petitioner for professional services rendered by him. We also have the testimony of four therapists who worked in petitioner's office, treated patients, received payments from the patients and turned such payments over to petitioner who then usually, at the end of the month, paid *117 each therapist a portion of these amounts under a fee-splitting arrangement. The evidence shows that petitioner's share of the fees under this arrangement during the years 1956 through 1959 was in the respective amounts of $1,650, $2,337.50, $3,872 and $11,020. On this record, there cannot be any serious dispute that these payments were made to petitioner by the patients and by the therapists. However, petitioner makes the unconvincing argument on brief that he received these payments on behalf of the Institute of Applied Psychology, Inc. and that a large part of these payments constituted income of the Institute rather than petitioner. This argument is completely without factual support in the record. Petitioner did not testify at the trial. Petitioner's only witness was the former wife of one of the patients who had testified for respondent and her testimony throughout was inconsequential. We cannot tell from this record whether the Institute of Applied Psychology did, in fact, exist as a meaningful entity distinct and apart from petitioner. As we have found, the checks in payment for professional services were for the most part made payable to cash or to petitioner and all such *118 checks were generally endorsed by him. There is no indication that he received such checks other than in his individual capacity. None of petitioner's tax returns for the years 1956 through 1959 indicate that he was employed by an institute or by anyone else. In fact, in his return for each of these years he indicates in Schedule C (Profit (or loss) From Business or Profession) that all of his business income came from his practice as a psychologist (1956 and 1957), and analyst (1958) and from research (1959), and in each of those tax returns he paid a self-employment tax on his reported profits from the above-described activities. He also stated in his petition to this Court that he was self-employed as a research psychologist during the years 1956 through 1959. We hold that the payments to petitioner by patients and by therapists during the years 1956 through 1959 are includable in petitioner's income. We have made certain adjustments in the total amounts of these payments as determined by respondent and such adjustments are reflected in our findings of fact. [2] *119 Respondent in his statutory notice of deficiency disallowed certain business expenses claimed by petitioner in the years 1956 through 1959 in the respective amounts of $150, $180, $175 and $1,950. The entire amounts disallowed in 1956, 1957 and 1958, as well as $450 of the total amount disallowed in 1959, were purportedly for lunches, entertaining, and gifts and gratuities. The remainder of the amount disallowed in 1959 ($1,500) was purportedly for rent. Petitioner has the burden of showing that he is entitled to these deductions. As indicated earlier, petitioner did not testify and his one witness did not touch upon this issue. On this record, we hold that petitioner is not entitled to any business deductions in excess of those allowed by respondent. We sustain respondent on this issue. Nor has petitioner met his burden of showing that he is entitled to a dependency exemption in 1956 for his son, Danny List. Once again, the record is silent on this issue and, accordingly, we sustain respondent's determination. Respondent determined that a part of the underpayment of tax in each of the years 1956 through 1959 was due to fraud within the meaning of section 6653(b). *120 The burden rests upon respondent to prove fraud by clear and convincing evidence. Madeline V. Smith, 32 T.C. 985. Again it is worthy of comment that petitioner did not testify. Respondent's evidence was a parade of some 28 patients who testified to personal transactions with petitioner. Their testimony stands undenied and unexplained by petitioner who was present and heard their testimony and chose to remain silent. Hence, the testimony of his patients is undisputed. Petitioner received fees from his professional practice and payments under the fee splitting arrangements with the therapists during the years 1956 through 1959 in the respective total amounts of $16,010, $19,417.50, $19,722 and $23,500 and, during those years, reported income from his practice of psychotherapy in the respective amounts of $2,580.98, $3,175, $3,200 and $7,500. In addition, petitioner failed to report the interest from savings accounts received by him in 1956, 1957 and 1958 in the respective amounts of $1,153.58, $1,273.60 and $1,353.04. Such consistent failure to report known substantial amounts of income over a number of years is by itself effective evidence of fraudulent intent. Schwarzkopf v. Commissioner, 246 F. 2d 731 *121 (C.A. 3, 1957), affirming T.C. Memo. 1956-155. There is also testimony from several of the patients that petitioner wanted fees paid in cash because he was supposed to be semiretired and did not wish to have the income revealed. In addition, there was evidence that patients were sometimes discouraged from claiming their payments of fees as medical deductions, presumably for the purpose of concealing such receipts of income by petitioner. In Spies v. United States, 317 U.S. 492, the Supreme Court stated that wilfulness to evade tax would be inferred from "concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal." We find, on this record, that respondent has shown by clear and convincing evidence that a part of the underpayment of tax for each of the years 1956 through 1959 was due to fraud. Petitioner pleaded guilty to charges of wilfully attempting to evade and defeat income taxes due for the years 1958 and 1959 in violation of section 7201, and the United States District Court for the Southern District of New York entered *122 judgment of guilt and conviction for such years. Such prior criminal convictions also necessitate a finding here under the doctrine of collateral estoppel that a part of the underpayment of tax for 1958 and 1959 was due to fraud within the meaning of section 6653(b). John W. Amos, 43 T.C. 50 (1964), affd. 360 F. 2d 358 (C.A. 4, 1965). Our finding that the petitioner's returns for the years 1956 through 1959 were fraudulent disposes of the statute of limitations issue raised by petitioner with respect to these years. Section 6501(c). Decision will be entered under Rule 50. Footnotes
1. All section references are to the 1954 I.R.C.↩, as amended, unless otherwise noted.
*. ↩
Interest income reported
$1,500.00
Interest received
1,376.39
Amount overstated
$ 123.61
*. Petitioner claimed a rental deduction of $300 in each of the years 1956, 1957 and 1958. For the year 1959, petitioner claimed a rental deduction of $1,800.↩
2. In none of the years before us will the total payments made to petitioner and includable in his income exceed the amounts determined by respondent.