ESTATE OF GEORGE DAVIS BLISSETT, Deceased, WILLIE F. BLISSETT, Executrix and WILLIE F. BLISSETT, Individually, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Blissett v. Commissioner
Docket No. 3252-73.
United States Tax Court
T.C. Memo 1975-34; 1975 Tax Ct. Memo LEXIS 339; 34 T.C.M. (CCH) 225; T.C.M. (RIA) 750034; February 26, 1975, Filed Leonard D. Van Slyke, Jr.,M. L. Ballew III, and James P. Knight, Jr., for the petitioner. Robert W. West, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency of $3,131.89 in petitioner's Federal income tax for 1970 together with an addition of $156.59 to the tax under section 6653(a). [1]/ Certain concessions have been made by both parties. The issues remaining for decision are: 1. Whether Willie F. Blissett and her husband, George Davis Blissett, understated income in 1970 in an amount determined by respondent by use of the source and application of funds method of reconstructing income; and 2. Whether any part of any underpayment of tax resulting therefrom was due to negligence or intentional disregard *340 of rules and regulations within the meaning of section 6653(a). FINDINGS OF FACT Willie F. Blissett was a resident of Morton, Mississippi, when the petition in this case was filed. She and her husband, George Davis Blissett (hereinafter referred to jointly as the Blissetts), owned and operated a retail grocery store in Morton, Mississippi, in 1970. In addition to the grocery store, the Blissetts operated a cattle-raising business on a 29-acre farm. George Davis Blissett (hereinafter referred to as decedent) died in an automobile accident in 1972. The Blissetts kept what may be described as a daily journal as a record of their grocery business. The journal contained a daily account of the dollar amount of sales, listed in a gross amount for each day in a column which had no heading, and a daily account of the dollar amount of inventory purchases, as well as other business expenses such as salary withdrawals. The journal contains no information regarding inventory on hand at the beginning or end of the year, nor does it provide any *341 information concerning capital expenditures or indirect business-related expenses, such as car upkeep. The Blissetts filed a timely joint Federal income tax return for 1970, reporting $4,006.21 in taxable income from their grocery and farming businesses and investments. As part of the return, the Blissetts filed schedules of the gross receipts, expenses, and income from their grocery and farming operations. The return and schedules were based upon, and are consistent with, the daily journal which the Blissetts kept as a record of their grocery business. An audit of the Blissetts' 1970 return was conducted by respondent. Respondent and decedent first ascertained all sources of cash to which the Blissetts had access, in addition to their sales receipts and certain bank accounts. In this connection, decedent signed and dated a statement that he had $11,000 in cash on hand on December 31, 1969, and December 31, 1970. The statement was signed in the presence of decedent's accountant, Pervis Culpepper, who was aware of the purpose of the statement. Decedent also maintained a constant balance of about $2,500 in cash in his store. Since the total balance of cash on hand ($13,500) remained *342 constant through each year's end, decedent did not utilize any net amount of these monies to pay expenses incurred during 1970. Once total sources of funds were accumulated, the computation of the application of funds was made. Checks pertaining to business expenses were segregated from checks written for personal living expenditures. The checks representing personal living expenses were totaled, and an estimate of other personal living expenses was added to the final result. After determining that the Blissetts' journal was inadequate for the purpose of calculating taxable income, respondent reconstructed the Blissetts' taxable income. Respondent determined (1) that the Blissetts expended $120,072.03 during 1970, but (2) that the available records and other data explained a source of funds of only $106,288.61. Accordingly, respondent determined that the Blissetts' Federal income tax return for 1970 understated income to the extent of $13,783.42. Included in the reconstructed expenditures was an estimated amount of $8,777.20, identified as "personal living expenses." The parties stipulated that the following items of expenditures were incurred by the Blissetts during 1970: *343 Church Contributions
$ 200.00
Medical
504.00
Income Tax
998.59
Life Insurance
238.00
Combined Insurance
136.00
Beef Calf
222.75
Electricity
134.33
Heat
120.00
Gasoline (1/2 Business)
528.33
Home Insurance
142.00
Car & Truck Insurance
651.85
Car Tags:
Mustang
52.53
Buick
57.65
Accountant's Fee
27.50
Water-Well Repairs
66.67
Telephone
120.00
Dry Cleaning
10.00
Barber Shop
52.00
Beauty Shop ($3.00 X 52)
182.00 [sic]
Cosmetics
25.00
Entertainment
100.00
Cigarettes (60 per day)
219.00
Repairs - Tires
34.00
Magazines, Books, Papers
28.80
Gifts - Christmas
120.00
Total
$4,971.00
The Blissetts had three children: Linda Blissett Donnell, Jimmy Blissett, and David Blissett. During 1970, Linda Blissett Donnell (hereinafter referred to as Linda) lived with her husband, Robert Donnell, in Hattiesburg, Mississippi. She visited her parents often during the year. Linda was a home economics instructor and an accomplished seamstress. She made nearly all of her mother's clothing and some of her father's. During that year the Blissetts spent only $300 on clothing. Jimmy Blissett (hereinafter Jimmy) lived at home from February 1970 *344 through early May of that year. During that period he worked in the store and on the farm. Decedent paid him wages in an amount not shown in the record. From May 8, 1970, through September 4, 1970, Jimmy served as a private on active duty in the Army, earning approximately $127 a month. Any money he was able to save, he sent home. Jimmy attended college for two quarters in 1970, one beginning in September and one in December. The cost of attending college was $300 per quarter, including room, board, tuition, and books. Jimmy paid for the first quarter and the Blissetts paid for the second. While at school, Jimmy worked some weekends in a stockyard and when working earned about $20 per weekend. He used this money for miscellaneous expenses, including his own clothing. David Blissett (hereinafter David) also attended college during part of 1970. He was at home in January and February and also from June through August 1970. While at college he returned home nearly every weekend. When at home, David worked in the store and was paid wages in an amount not shown by the record. In addition to his store salary, David received four quarterly checks in the amount of $125 each for membership *345 in the Mississippi National Guard, and one check in the amount of $200 for attending National Guard summer camp. David's attendance at college included three quarters during 1970, one beginning in March, one in September, and one in November. The total expense for each quarter approximated $300, which included room, board, tuition, and books. During 1970, the Blissetts paid $600 for David's college expenses; David paid for one quarter with his own funds. Jimmy and David drove cars owned by decedent. Decedent absorbed all of the operating expenses for the cars, including gas, oil, and repairs. In order to feed their family, including decedent's mother who resided with them, the Blissetts raised vegetables in a 2-acre garden on their farm, and had some of their cattle butchered for home consumption. The cattle were butchered and the meat was prepared and wrapped by a third party at a cost not shown in the record. The Blissetts canned and froze produce grown in the garden. For the entire year, the Blissetts spent $960 for food for their family, including the purchase of miscellaneous household items. ULTIMATE FINDINGS OF FACT The Blissetts understated their income to the extent *346 of $12,137.20 for the year 1970. The resulting underpayment of tax was due, at least in part, to negligence or intentional disregard of the rules and regulations within the meaning of section 6653(a). OPINION Respondent found that the Blissetts' books and records were inadequate for the purpose of determining the correct amount of taxable income and, accordingly, he employed the source and application of funds method of income reconstruction. This method of income reconstruction is not new and has received judicial sanction on several occasions, United States v. Johnson,319 U.S. 503 (1943); Goldberg v. Commissioner,239 F.2d 316, 319 (C.A. 5, 1956). By comparing the sources of funds available to the Blissetts with the amount of their expenditures for the year, it was determined that they understated income in the amount of $13,783.42. Petitioner poses several legal and factual arguments to refute respondent's determination. First, petitioner challenges respondent's authority to reconstruct income in the face of petitioner's allegedly adequate books and records, citing Lowell F. Bushnell, 49 T.C. 296 (1967). Second, petitioner *347 maintains that the deficiency and penalty addition must be overturned on the ground that respondent failed to prove the likely source of the determined taxable income in excess of the amount reported. Finally, petitioner contests the reasonableness of respondent's estimate of certain expenditures for personal living expenses. We find no substantial merit in petitioner's arguments. Subject to a modification of the determined amount of living expenses, we sustain respondent's determination. We think respondent was fully justified in using an indirect method of income reconstruction to test the accuracy of the Blissetts' records. Schwarzkopf v. Commissioner,246 F.2d 731, 733-734 (C.A. 3, 1957), affirming a Memorandum Opinion of this Court; Morris Lipsitz, 21 T.C. 917, 931 (1954), affd. 220 F.2d 871 (C.A. 4, 1955), certiorari denied 350 U.S. 845 (1955); Lowell F. Bushnell,supra at 311-312 (concurring opinion). Since the test applied by respondent demonstrates that the Blissetts expended substantially larger amounts than their reported income would permit, we think the burden rests with petitioner to *348 show that respondent's determination, made through use of a recognized method of income reconstruction, is erroneous. Schroeder v. Commissioner,291 F.2d 649, 652 (C.A. 8, 1961), affirming a Memorandum Opinion of this Court; Thomas B. Jones,29 T.C. 601, 613-614 (1957). Petitioner's argument that respondent has failed to prove a likely source of the additional income is beside the point. Neither the statute of limitations nor fraud penalties are here involved, and the burden of proof, therefore, rests with petitioner. We note, however, that where it is shown that a taxpayer is engaged in a lucrative business--such as the Blissetts' grocery store--and is making regular and frequent sales, depositing the proceeds therefrom and using them or checking against them for his own use, a trial court may reasonably infer that the monies so used are taxable income. See Gleckman v. United States,80 F.2d 394, 398-399 (C.A. 8, 1935), certiorari denied 297 U.S. 709 (1936); Goe v. Commissioner,198 F.2d 851, 852 (C.A. 3, 1952), affirming a Memorandum Opinion of this Court, certiorari denied 344 U.S. 897 (1952); *349 Escobar v. United States,388 F.2d 661, 667 (C.A. 5, 1967), certiorari denied 390 U.S. 1024 (1968). To carry its burden, petitioner must either establish the adequacy of the Blissetts' records by showing the income tax return, based on those records, was correct, David Courtney,28 T.C. 658, 664 (1957), or prove that the discrepancy between the source and the application of funds was due to nontaxable receipts, see Thomas B. Jones,supra at 619; Marcella v. Commissioner,222 F.2d 878 (C.A. 8, 1955). Petitioner has not established that the Blissetts' records were adequate. Since those records contained no evidence of either opening or closing inventory, they provided no satisfactory way of determining how much net income was derived from the operation of the grocery store. Even as to the sales and expenditures recorded in the journal, there was no systematic procedure for record-keeping. Several members of the family worked in the store and the person who made the particular expenditure or totaled the sales for a particular day would make entries. The journal reflects no system of checking *350 and balancing to assure the accuracy of the figures. Nor does it provide any means for verifying petitioner's contention that large amounts of cash were kept on hand and fed into the business as needed. Nor has petitioner been able to prove a source of nontaxable receipts. Petitioner relies largely upon an alleged cash hoard of $20,000 (buried in a mayonnaise jar in the Blissetts' yard), allegedly fed into the business or used for personal expenses as needed. Several witnesses testified to the existence of the hoard, but, with the exception of David Blissett, no witness could approximate the amount contained in the jar. David, who estimated the amount of currency buried in the jar at $12,000, could establish neither an exact figure nor the year in which the hoard contained $12,000. Moreover, the testimony of several witnesses conflicted with respect to the exact location of the money and its condition. While one witness distinctly remembered an occasion during which the money was displayed to the entire family, no one else recalled this event. We find this vague, conflicting testimony unsatisfactory evidence of a $20,000 cash hoard. Jackson v. United States (an unreported *351 case) ( N.D. Ill. 1973, 31 A.F.T.R.2d 73-656, 73-1U.S.T.C. par. 9154). Respondent introduced the only tangible evidence of the amount of currency which decedent may have possessed. At the time of the revenue agent's audit, decedent signed and dated a statement that he had $11,000 cash on hand at the beginning and at the end of 1970. This statement was signed in the presence of decedent's accountant. While the accountant testified that decedent stated that he was not sure of the amount, other testimony indicated that decedent checked and counted his cash often. Since the most cogent evidence indicates that the amount of cash on hand remained constant throughout the year, petitioner's contention that a $20,000 cash hoard was fed into the business or used for personal expenses is without merit. Finally, petitioner contests the accuracy of respondent's estimate of three items of personal living expenses: clothing, food, and college tuition. With respect to the clothing expenses, Mrs. Blissett testified that $300 was spent for this purpose. Respondent has conceded the accuracy of that figure. Respondent estimated that the Blissetts spent $80 per month (approximately *352 $18.50 per week) for food during 1970. Mrs. Blissett testified that only $12 per week was so spent. We find respondent's estimate more realistic. Three persons resided in petitioner's home during the entire year: decedent, Mrs. Blissett, and decedent's mother. The Blissetts' two sons were both home for considerable periods during the year; David testified that, even while in school, he was home nearly every weekend. Mrs. Blissett admitted that her estimate included neither the cost of raising or preserving the vegetables in the garden nor the cost of having their cattle butchered and prepared for home consumption. In view of these facts, $80 per month is a more realistic figure. As to the third item of personal living expenses, respondent determined that the Blissetts spent $2,290 for Jimmy's and David's college expenses, including tuition, room, board, books, and miscellaneous expenses. On brief, respondent concedes that this figure is too high. Respondent now maintains that the Blissetts spent $900 for tuition ($300 for Jimmy and $600 for David) and $360 for miscellaneous expenses for the two sons. Since Mrs. Blissett testified that she paid $600 for two of David's quarters at *353 college, the only issues are the amount spent for (1) Jimmy's education and (2) the miscellaneous expense. Jimmy testified that he attended two quarters of college in 1970 and that he paid the expenses for both. He stated that he paid the expenses with approximately $508 he earned in the Army, money he earned working weekends in a stockyard (approximately $20 per weekend), and money earned while working in his parents' store. On consideration of all the evidence, we find that the Blissetts paid Jimmy's tuition ($300) for one semester, and he paid it for the other. Respondent determined that the Blissetts provided their sons with $360 for miscellaneous expenses. Taking into consideration that (1) Jimmy received checks from the Army, (2) David received checks from the Mississippi National Guard, and (3) both sons worked for their parents, we think the record fairly shows that the sons earned enough to pay for their own miscellaneous expenses. [2]/ *354 The last issue to be addressed is whether the additions to tax under section 6653(a) determined by respondent are applicable. We have found that petitioner substantially understated income in 1970 and no acceptable explanation has been offered therefor. The burden of establishing that due care was used in reporting income is upon petitioner, Carroll F. Schroeder,40 T.C. 30 (1963). Petitioner has not carried that burden. Respondent's regulations require each taxpayer to maintain records adequate to establish and verify income. Secs. 1.446-1(a)(4), 1.6001-1(a), Income Tax Regs. The Blissetts' records, as presented to this Court, are woefully inadequate: they were kept in a slipshod manner by the entire family; no verification of expenditures or receipts was presented; the records do not account for the alleged use in the business of cash stored at home; and the journal contains no entries or verification of figures in connection with opening and closing inventories. While the income tax return was consistent with the Blissetts' records, the records were clearly not complete. Under such circumstances, the negligence penalty is appropriate. Barry Meneguzzo,43 T.C. 824, 836 (1965); *355 cf. Marcello v. Commissioner,380 F.2d 499, 505-507 (C.A. 5, 1967), affirming 43 T.C. 168 (1964), certiorari denied 389 U.S. 1044 (1968). To reflect the foregoing and concessions made by the parties, Decision will be entered under Rule 155.
Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.
2. /↩ Moreover, respondent relies upon testimony that decedent paid for the gasoline used by the sons. However, the amount of money spent on gasoline was stipulated to by the parties and cannot be used again to show that decedent gave his sons an additional $360.