146 T.C. No. 9

UNITED STATES TAX COURT

BOHDAN SENYSZYN AND KELLY L. SENYSZYN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9721-11.                          Filed March 31, 2016.


        Between 2002 and 2004, PH misappropriated funds from a
business associate, DH. As part of a criminal investigation of PH, a
revenue agent examined records of accounts belonging to Ps, DH, or
related entities and determined that, during 2003, PH received from
DH's accounts $252,726 more than he paid back to DH during that
year. PH later pleaded guilty to and was convicted of criminal
charges, including tax evasion in violation of I.R.C. sec. 7201. Under
a plea agreement, PH agreed to a stipulation that he knowingly and
willfully failed to report $252,726 of taxable income for 2003.

        <u>Held</u>: The evidence presented shows that, contrary to the
revenue agent's analysis, PH repaid to DH during 2003 more than the
amount the revenue agent determined PH to have misappropriated
from DH in that year.

        <u>Held</u>, <u>further</u>, the purposes of the doctrine of collateral estoppel
do not support its application to uphold whatever minimum
deficiency would be consistent with PH's conviction for tax evasion.

Held, further, because Ps are not liable for any deficiency in their Federal income tax for 2003, the fraud penalty R asserts against PH and the accuracy-related penalty R asserts against PW are not sustained.

Bohdan Senyszyn and Kelly L. Senyszyn, pro sese.

Marco Franco and Lydia A. Branche, for respondent.

HALPERN, Judge: By notice of deficiency dated February 15, 2011, respondent determined for petitioners' 2003 taxable year a deficiency in Federal income tax of $81,746, a fraud penalty of $61,310 against petitioner Bohdan Senyszyn, and an accuracy-related penalty of $16,349 against petitioner Kelly L. Senyszyn. The deficiency in tax results primarily from respondent's adjustment increasing petitioners' 2003 gross income on account of $252,726 of income that petitioners failed to report. In the answer, because of what he describes as computational adjustments, respondent asserted an increased deficiency, accuracy-related penalty, and fraud penalty of $90,496, $67,872, and $18,099, respectively. Petitioners assign error to respondent's deficiency determination and to the penalties. They also claim as an affirmative defense that Mrs. Senyszyn qualifies for relief from joint and several liability for any deficiency under the "innocent

spouse" rules of section 6015. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 2003, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all dollar amounts to the nearest dollar.

## FINDINGS OF FACT

### Background

Petitioners resided in New Jersey when they timely filed their petition.

During the late 1990s and early 2000s, Mr. Senyszyn, then an internal revenue agent, became increasingly involved in the business affairs of a real estate developer, David Hook. Mr. Senyszyn persuaded Mr. Hook to give him control over his business on the basis of Mr. Senyszyn's claims that he could save taxes by creating new entities. By mid-2002, Mr. Senyszyn had obtained nearly full control over Mr. Hook's business affairs and accounts.

### The Modern Method Trust

In September 2002, as part of his tax planning efforts for Mr. Hook, Mr. Senyszyn executed an indenture for a trust known as the Modern Method Trust (trust). The trust indenture identifies Mr. Senyszyn as both grantor and trustee.

The evidence, however, does not show what assets, if any, Mr. Senyszyn transferred to the trust upon its formation.[1]

Mr. Hook later contributed to the trust real property referred to as Lot 70, allegedly on the understanding that his children were the trust's sole beneficiaries. The trust indenture, however, identifies both Mr. Hook's and petitioners' children as beneficiaries.

On November 19, 2003, Mr. Hook sold real property in Lafayette, New Jersey. Of the total $351,000 sale price for the property, $202,626 was paid to the trust.

Acquisition of the Hardyston Property

On June 18, 2003, Mr. Hook and Mr. Senyszyn purchased real property in Hardyston and Wantage Townships, New Jersey (Hardyston property), as joint tenants with the right of survivorship, paying $450,000. Mr. Hook had intended to purchase the Hardyston property himself until Mr. Senyszyn advised him that he lacked sufficient funds. Mr. Senyszyn then offered to pay half of the purchase price himself. Mr. Senyszyn purported to have paid his share of the price of the

_____

[1]The indenture purports to effect a transfer, by Mr. Senyszyn, of those assets listed on an attached schedule, but the schedule is blank.

Hardyston property from his own funds, entitling him to a joint interest in the property.

Petitioners' Original 2003 Federal Income Tax Return

On January 29, 2004, petitioners filed a joint 2003 Form 1040, U.S. Individual Income Tax Return. On that return, petitioners reported wages of $78,116, gross receipts of $25,850 on Schedule C, Profit or Loss From Business, and gross receipts of $1,200 on Schedule F, Profit or Loss From Farming. Petitioners did not report gross income from any other sources on their return, nor did they otherwise disclose any other sources of income on the return or on a statement attached to the return.

Mr. Hook's Suit Against Mr. Senyszyn

On May 28, 2004, Mr. Hook filed a civil suit alleging fraud against petitioners in New Jersey State court. The complaint charges that petitioners embezzled and converted a minimum of $400,000. At trial, Mr. Hook alleged that Mr. Senyszyn had embezzled a total of $1 million from 2002 to 2004. In 2006, Mr. Senyszyn and Mr. Hook joined in deeding all but one parcel of the Hardyston property to Mr. Hook in partial settlement of Mr. Hook's claim against petitioners.

## Agent DeGrazio's Analysis

Mr. Hook's civil suit led to a Federal criminal investigation of Mr. Senyszyn. As part of that investigation, Internal Revenue Agent Carmine DeGrazio was asked to determine the amount of unreported income Mr. Senyszyn had received in 2003. Agent DeGrazio examined records of accounts belonging to petitioners, to Mr. Hook, or to related entities--including bank statements, canceled checks, and supporting documentation--to determine the flow of funds between Mr. Hook's accounts and Mr. Senyszyn's accounts.

Agent DeGrazio compared the transfers made from Mr. Hook's accounts to Mr. Senyszyn's accounts with the transfers in the opposite direction and concluded that Mr. Senyszyn had received $252,726 of net "benefits" from Mr. Hook that petitioners did not report on their 2003 Form 1040. Agent DeGrazio's calculation can be summarized as follows:

| Item | Amount |
|---|---|
| Benefits to Senyszyn | $481,947 |
| Funds returned to Hook | 229,221 |
| Total unreported income | 252,726 |

On the premise that Mr. Hook funded the trust, Agent DeGrazio treated the trust's assets as Mr. Hook's for purposes of his analysis. Thus, Agent DeGrazio

treated as "benefits" to Mr. Senyszyn his use of trust assets to pay personal and family expenses.

The $229,221 of funds that Agent DeGrazio determined Mr. Senyszyn to have returned to Mr. Hook included payments of $104,237 allegedly made by Mr. Senyszyn to the trust. Because Mr. Senyszyn was "charged with" payments by the trust for his benefit, Agent DeGrazio explained at trial that "anything that goes back from Mr. Senyszyn [to the trust] should be credited." Agent DeGrazio elaborated on his thinking in the following colloquy with Mr. Senyszyn:

| | |
|---|---|
| Agent DeGrazio: | To the extent that we hit you for anything that came out of that trust account to you, well, then the other side of the coin is it's only fair to say that if anything come from you back to that account, that should be a credit to you. |
| Mr. Senyszyn: | I agree. That's fair. |
| Agent DeGrazio: | That should absolutely be done. |

Among the transfers allegedly made by Mr. Senyszyn to the trust that Agent DeGrazio credited as repayments was a transfer of $91,437, dated December 31, 2003, and described as "Journaled Funds from B.S. Schwab Acct. #6583". According to Agent DeGrazio, the reference to "Journaled Funds" indicates that the transfer was made from Mr. Senyszyn's account with the investment firm Charles Schwab to the trust's account with the same firm. Because both accounts

were maintained with the same institution, funds could be transferred between the two accounts simply by journal entry.

Mr. Senyszyn's Criminal Case

On September 20, 2007, the U.S. Attorney for the District of New Jersey filed a four-count information in a criminal case against Mr. Senyszyn that included a charge of tax evasion in violation of section 7201. In support of the tax evasion charge, the information alleged that Mr. Senyszyn embezzled approximately $252,726 from Mr. Hook during 2003 and failed to include that amount in the income reported on petitioners' 2003 Form 1040. The information also alleged, in support of both the tax evasion count and a separate count under section 7214(a)(7) (making or signing of fraudulent return by officer or employee of United States), that Mr. Senyszyn prepared and filed a fraudulent return on behalf of Mr. Hook's corporation, Modern Method Development, Inc. (MMDI).

Contemporaneous with the U.S. attorney's filing of charges against him, Mr. Senyszyn signed an agreement to plead guilty to all four of the counts with which he was charged. Mr. Senyszyn agreed to stipulate at sentencing: "BOHDAN SENYSZYN knowingly and willfully did not include about $252,726.00 in additional taxable income that he acquired in 2003." In exchange for Mr.

Senyszyn's agreement to plead guilty, the U.S. attorney dropped charges against Mrs. Senyszyn.

On September 20, 2007, Mr. Senyszyn entered a plea of guilty in accordance with his agreement with the U.S. attorney. Although he subsequently moved to withdraw his guilty plea to the count of tax evasion, the U.S. District Court for the District of New Jersey denied the motion and, on February 25, 2008, it entered judgment pursuant to the plea. Mr. Senyszyn appealed the denial of his motion to withdraw his guilty plea, and the U.S. Court of Appeals for the Third Circuit affirmed the denial. See United States v. Senyszyn, 338 F. App'x 201 (3d Cir. 2009). Mr. Senyszyn filed a motion to vacate, set aside, or correct his sentence, and that motion was denied, as well. See Senyszyn v. United States, No. 2:09-cv-6120, 2010 WL 2483541 (D.N.J. June 4, 2010) (order denying motion). He did not file a direct appeal of his criminal sentence, and his conviction has become final.

Petitioners' Amended 2003 Federal Income Tax Return

On June 30, 2008, petitioners submitted to respondent a Form 1040X, Amended U.S. Individual Income Tax Return, for calendar year 2003. The Internal Revenue Service (IRS) received that return but did not process it. At trial,

Mr. Senyszyn claimed that he had prepared the amended return at the instruction of the judge in his criminal case, who directed him to file correct amended returns.

Schedule C of the Form 1040X reports $252,726 of additional gross income. That schedule treats as "gross receipts or sales" the $481,947 of benefits Agent DeGrazio determined Mr. Senyszyn to have received from Mr. Hook, subject to an offset for the $229,221 Agent DeGrazio determined to have been repaid, resulting in the reported $252,726 of gross income.

The Schedule C also reports undetailed expenses of $476,005, resulting in a reported net profit of -$223,279. In his testimony, Mr. Senyszyn described the undetailed expenses as an additional repayment to Mr. Hook that Agent DeGrazio had omitted from his analysis. According to Mr. Senyszyn, the expenses consist primarily of two payments deposited in escrow to fund his and Mr. Hook's purchase of the Hardyston property, evidenced by copies of two checks that were attached to the Schedule C.

Agent DeGrazio's Alleged "Mathematical Error"

At trial, Mr. Senyszyn agreed that, with one exception, the transfers listed in Agent DeGrazio's analysis actually occurred in the amounts and on the dates indicated. The only item to which Mr. Senyszyn takes exception is the alleged

journal entry transfer of $91,437 on December 31, 2003, from his Charles Schwab account #6583 to the trust's account.

Agent DeGrazio could not explain at trial how he came up with the $91,437 figure that appears in his analysis. He claimed he would have based the allowance in Mr. Senyszyn's favor on "some type of document" but could no longer recall what that document was. He then speculated that he "would have went back to * * * the Schwab statement." But no transfer of $91,437 appears on the Charles Schwab account #6583 statement for December 2003.

The monthly statements of the trust's Charles Schwab account #6583 for 2003 show that, while no transfer between Mr. Senyszyn's account and the trust's account occurred on December 31, 2003, other transfers occurred throughout the year from Mr. Senyszyn's account to the trust's account that total $595,900. The amounts and dates (in 2003) of those transfers are as follows:

| Date of transfer | Amount |
|---|---|
| Feb. 27 | $50,000 |
| Mar. 19 | 85,000 |
| Mar. 20 | 180,000 |
| Mar. 21 | 30,000 |
| Apr. 29 | 4,900 |
| May 1 | 46,000 |
| May 7 | 48,000 |
| May 19 | 9,000 |
| June 6 | 94,000 |
| July 7 | 6,000 |
| July 17 | 12,000 |
| July 31 | 7,000 |
| Aug. 14 | 7,000 |
| Dec. 4 | 8,000 |
| Dec. 18 | 9,000 |
| Total | 595,900 |

Agent DeGrazio omitted those transfers from his analysis.

The statement of the trust's Charles Schwab account #6583 for January 2003 shows a transfer to Mr. Senyszyn's account of $250,000, made on January 3, 2003. That is the only transfer from the trust's account to Mr. Senyszyn's account that appears on any of the monthly statements of the trust's account for 2003. Agent

DeGrazio did not include the January 2003 transfer of $250,000 from the trust's Charles Schwab account to Mr. Senyszyn's account in his calculation of benefits received by Mr. Senyszyn during 2003.

## OPINION

I.     Burden of Proof

The primary factual issue before us is whether, during 2003, Mr. Senyszyn took from the accounts of his business associate, David Hook, and used for his own purposes $252,726 more than he repaid to Mr. Hook.

In general, a taxpayer bears the burden of proof. Rule 142(a)(1). However, section 7491(a) shifts the burden of proof to the Commissioner in certain situations if the taxpayer raises the issue, introduces credible evidence with respect to any factual issue relevant to ascertaining the proper tax liability, and demonstrates compliance with the applicable requirements of section 7491(a)(2).

Because we base our decision regarding the relative amounts that Mr. Senyszyn took from and repaid to Mr. Hook during 2003 upon a preponderance of the evidence, we need not assign the burden of proof. See, e.g., Estate of Black v. Commissioner, 133 T.C. 340, 359 (2009); Estate of Bongard v. Commissioner, 124 T.C. 95, 111 (2005).

II.  Respondent's Threshold Arguments

Respondent suggests that the asserted deficiency and penalties can be sustained solely on Mr. Senyszyn's stipulation in his criminal tax proceeding. Although we previously concluded that the stipulation to which Mr. Senyszyn agreed in his criminal case does not collaterally estop petitioners from challenging the amount of the deficiency respondent asserts in this civil proceeding, we acknowledged that Mr. Senyszyn's stipulation is "strong evidence of the deficiency amount".  Senyszyn v. Commissioner, T.C. Memo. 2013-274, at *9-*11.  Respondent alleges that petitioners failed to present credible evidence contrary to the stipulation and that, consequently, the asserted deficiency and penalties "should be sustained solely on the basis of Mr. Senyszyn's admission." As explained below, however, the evidence presented convinces us that Agent DeGrazio understated the amount that Mr. Senyszyn repaid to Mr. Hook during 2003 and that correction of Agent DeGrazio's error eliminates the asserted deficiency.

Respondent also argues that petitioners' reporting of $252,726 of additional income on Schedule C of their 2003 amended return constitutes an admission that warrants sustaining the asserted deficiency.  Although "[s]tatements made in a tax return signed by a taxpayer may be treated as admissions", Lare v. Commissioner,

62 T.C. 739, 750 (1974), aff'd without published opinion, 521 F.2d 1399 (3d Cir. 1975), we do not view petitioners' amended 2003 return as an acceptance of Agent DeGrazio's analysis in its entirety.

While petitioners' amended return reports as income the $252,726 of net benefits that Agent DeGrazio determined Mr. Senyszyn to have received from Mr. Hook, that return also claims an additional deduction of $476,005. We reject petitioners' argument that the $476,005 they reported as a deduction on their amended return should be treated as a repayment to Mr. Hook in 2003.[2] Nonetheless, petitioners' claiming of that deduction means that we cannot treat their amended return as an admission that Agent DeGrazio accurately computed both the benefits that Mr. Senyszyn received from Mr. Hook in 2003 and the amounts Mr. Senyszyn repaid to him in that year.

---

[2]According to petitioners, the $476,005 deduction claimed on their 2003 amended return consists primarily of amounts paid to acquire the Hardyston property. If Mr. Hook had owned full title to the Hardyston property from its initial acquisition in 2003, Mr. Senyszyn's provision of some or all of the funds paid to acquire the property could properly be treated as a repayment to Mr. Hook in that year. Instead, however, Mr. Senyszyn purported to have provided his share of the price of the property from his own funds, entitling him to a joint interest in that property. Therefore, Mr. Senyszyn did not effect any repayment by means of the Hardyston property until 2006, when all but one parcel of the property was deeded to Mr. Hook in partial settlement of his civil claim against petitioners.

III.    Agent DeGrazio's Analysis

Having rejected respondent's threshold arguments, we turn to Agent DeGrazio's analysis and the error that petitioners allege him to have made in his calculations.

A.    The Propriety of Agent DeGrazio's Method

Contrary to petitioners' arguments, we accept the propriety of the method Agent DeGrazio used to determine the amount of income that they failed to report on their initial 2003 Federal income tax return.  Agent DeGrazio sought to determine the net flow of funds from Mr. Hook's accounts to Mr. Senyszyn's accounts by examining records of those accounts.  Petitioners appear to argue that their compliance with the recordkeeping requirements of section 6001 renders impermissible Agent DeGrazio's analysis of their receipts and expenditures as a means of identifying and quantifying unreported income.  Although respondent disputes petitioners' claim that they kept adequate books and records, we need not resolve that question.  A taxpayer's maintenance of adequate books and records does not prevent the Commissioner from determining a deficiency when he determines that those books and records show income that the taxpayer failed to report on his return.  See Bushnell v. Commissioner, 49 T.C. 296, 307 (1967) (rejecting Commissioner's analysis of changes in taxpayer's net worth as an

indirect means of identifying unreported income but upholding deficiency based on taxpayer's books and records).

In short, the issue before us is not whether Agent DeGrazio's comparison of the benefits that Mr. Senyszyn received from Mr. Hook in 2003 and the amounts repaid in that year was an appropriate means of determining the extent to which petitioners underreported their income for the year. Instead, the issue is whether Agent DeGrazio correctly computed the relevant amounts.

B.      The Alleged "Mathematical Error"

Petitioners offer various reasons why the amounts that Agent DeGrazio reported as "benefits" to Mr. Senyszyn should not be included in their gross income. In general, we are unpersuaded by petitioners' arguments about the taxability of Mr. Senyszyn's use of funds from Mr. Hook's accounts. Most of those arguments rest on the proposition that petitioners did not actually receive the amounts in question. Those amounts not received by petitioners that Agent DeGrazio treated as income, however, were paid for their benefit. It has long been clear that "[t]he discharge by a third person of an obligation to him is equivalent to receipt by the person taxed." See Old Colony Tr. Co. v. Commissioner, 279 U.S. 716, 729 (1929).

In any event, because we find that Mr. Senyszyn returned to Mr. Hook in 2003 more than the $481,947 of benefits that he received from Mr. Hook in that year, as calculated by Agent DeGrazio, we need not examine in detail the extent to which petitioners were required to include those benefits in income.[3]  Mr. Senyszyn's repayment of more than $481,947 in 2003 entitles petitioners to a deduction or offset of more than the amount of unreported receipts alleged by respondent for that year.  See James v. United States, 366 U.S. 213, 220 (1961) (quoting with approval Government's observation on brief that victim's recovery of misappropriated funds reduces embezzler's income); Chumbook v. Commissioner, T.C. Memo. 1977-108, 1977 Tax Ct. Memo LEXIS 330, at *14 ("Where restitution of wrongfully converted property is made prior to the close of the year of the wrongful conversion, the restitution offsets what would otherwise be income, so that no income results from the wrongful conversion.").

The only item included in Agent DeGrazio's analysis that petitioners dispute in amount as well as tax treatment is the purported transfer of $91,437 made by journal entry on December 31, 2003, from Mr. Senyszyn's Charles Schwab

---

[3]We view it as unlikely that, in total, Mr. Senyszyn returned to Mr. Hook more funds than he took.  According to Mr. Hook's testimony, however, Mr. Senyszyn's alleged misappropriation occurred over a three-year period encompassing 2002 to 2004, while we have before us only one of those years.

account to the trust's account. Agent DeGrazio readily accepted that any transfers from Mr. Senyszyn's Charles Schwab account to the trust's account should be treated as repayments by Mr. Senyszyn to Mr. Hook. But he could not explain at trial how he came up with the $91,437 figure that appears in his analysis.

Respondent initially dismissed Agent DeGrazio's alleged error on the grounds that he treated the transfer as a repayment by Mr. Senyszyn to Mr. Hook. Disregarding the purported transfer, respondent suggested, would simply increase the asserted deficiency.

But petitioners do not allege that Agent DeGrazio overstated Mr. Senyszyn's repayments to Mr. Hook. Instead, petitioners allege that Agent DeGrazio understated those repayments. And the monthly statements of the trust's Charles Schwab account #6583 for 2003 support petitioners' allegation. Agent DeGrazio's analysis failed to consider the $595,900 of transfers made from Mr. Senyszyn's Charles Schwab account to the trust's account during 2003.

Respondent offers two arguments in response to petitioners' claim for an adjustment of $595,900 in the amount that Mr. Senyszyn repaid to Mr. Hook during 2003 to correct Agent DeGrazio's "mathematical error". First, respondent observes that petitioners simply tote up the journal entry transfers going "in one direction", from Mr. Senyszyn's account to the trust's account, and make no

allowance for transfers in the other direction. Respondent points to the $250,000 transfer from the trust's account to Mr. Senyszyn's account in January 2003 "[b]y way of example". But that transfer is not one example among many. It is the only transfer from the trust's account to Mr. Senyszyn's account that appears on any of the monthly statements of the trust's account for 2003.

Respondent's second argument regarding Agent DeGrazio's alleged math error is that petitioners failed to identify the source of the funds transferred from Mr. Senyszyn's Charles Schwab account to the trust's account. Respondent's argument reflects the premise that, to the extent that the funds moved from Mr. Senyszyn's account to the trust's account came from Mr. Hook, they should not count as repayments by Mr. Senyszyn to Mr. Hook. But that premise is mistaken. If, for example, a taxpayer embezzles $20 from a victim and, in the same year, returns $15, the taxpayer has $5 of income--not $20. See James, 366 U.S. at 220; Chumbook v. Commissioner, 1977 Tax Ct. Memo LEXIS 330, at *14. And the embezzler's repayment of the embezzled funds reduces his income regardless of whether the $15 returned was part of the particular funds embezzled from the victim or instead came from another source. If the embezzled funds count as income, then, as Agent DeGrazio recognized, the return of those funds (or their equivalent) counts as an offset to the income.

On the preponderance of the evidence submitted, we conclude that Mr. Senyszyn made repayments to Mr. Hook in 2003 of $483,684, computed as follows:

| Item | Amount |
|------|--------|
| Repayments determined by Agent DeGrazio | $229,221 |
| Erroneous 12/31/03 transfer | (91,437) |
| Transfers from Mr. Senyszyn's account to trust's account reported on monthly statements | 595,900 |
| Transfer from trust account to Mr. Senyszyn's account | [1](250,000) |
| Corrected amount of repayments | 483,684 |

[1]We treat the January 2003 transfer from the trust's Charles Schwab account to Mr. Senyszyn's account as a subtraction from the net repayments made by Mr. Senyszyn during that year because Agent DeGrazio did not include this transfer in his calculation of benefits received by Mr. Senyszyn during the year.

Therefore, even if we accept Agent DeGrazio's determination that, during 2003, Mr. Senyszyn took $481,947 from Mr. Hook's accounts and used those funds for his own purposes, we find that Mr. Senyszyn repaid to Mr. Hook during that year more than he took. Because any taxable income to Mr. Senyszyn as a result of his misappropriation should be offset by amounts repaid in the same year, and because the deficiency that respondent asserted is based entirely on petitioners' omission of

$252,726 of income, the evidence presented does not support the asserted deficiency.[4]

IV.    Collateral Estoppel

Although the evidence presented does not support the amount of the deficiency that respondent asserted--or, indeed, any deficiency at all--we could apply the doctrine of collateral estoppel to uphold a deficiency in whatever minimum amount would justify Mr. Senyszyn's conviction under section 7201. Under the doctrine of collateral estoppel, or issue preclusion, once an issue of fact or law is "actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v. United States, 440 U.S. 147, 153 (1979). "Collateral estoppel * * * has the dual purpose of

---

[4]Despite our finding that Mr. Senyszyn repaid to Mr. Hook during 2003 more than the amount that Agent DeGrazio determined Mr. Senyszyn to have misappropriated from Mr. Hook during that year, we reject petitioners' claim for a refund. Our ancillary jurisdiction to determine overpayments and order refunds is subject to applicable periods of limitation. Sec. 6512(b). In particular, we cannot allow a refund if a claim therefor would have been barred by the applicable statute of limitation had the claim been made on the date of issuance of the notice of deficiency. See id. para. (3)(B). Because petitioners filed their original return for 2003 on January 29, 2004, before its due date of April 15, 2004, the period of limitation for a claim for refund of tax for that year ended three years after the due date of the return, on April 15, 2007. See secs. 6511(a), 6513(a). Thus, the limitation period expired almost four years before respondent's issuance of a notice of deficiency on February 15, 2011.

protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979). It also "fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." Montana, 440 U.S. at 154.

We previously determined that, because the exact amount of petitioners' underpayment of tax was not a necessary element of tax evasion under section 7201, "Mr. Senyszyn's stipulation in his criminal tax proceeding does not collaterally estop him from challenging respondent's adjustment for unreported income in this civil proceeding." Senyszyn v. Commissioner, at *10-*11. Nonetheless, the existence of some underpayment was a necessary element of the offense for which Mr. Senyszyn was convicted. See Sansone v. United States, 380 U.S. 343, 351 (1965) (listing "the existence of a tax deficiency" among "the elements of § 7201"). Therefore, we accepted that Mr. Senyszyn's criminal conviction established the existence of an underpayment by petitioners for 2003 but not its exact amount. Senyszyn v. Commissioner, at *12-*13; see also Anderson v. Commissioner, T.C. Memo. 2009-44, 2009 WL 454182, at *19 (holding that prior conviction of tax crimes established fraud for purposes of

statute of limitations and penalties with amounts of deficiencies and penalties to be determined by trial), aff'd, 698 F.3d 160 (3d Cir. 2012).

Although the existence of some tax deficiency is a necessary element of the offense described in section 7201, prior cases do not establish a minimum amount necessary to support a conviction. Some U.S. Courts of Appeals have suggested that section 7201 requires a "substantial" deficiency. E.g., United States v. McKee, 506 F.3d 225, 235-236 (3d Cir. 2007) (holding that, while "the government need not allege or prove the precise amount of additional tax due and owning" to support a charge of tax evasion under section 7201, the evidence must "establish a substantial tax deficiency"); United States v. Mounkes, 204 F.3d 1024, 1028 (10th Cir. 2000) ("To establish th[e] offense [described in section 7201], the government must prove * * * the existence of a substantial tax liability[.]"); United States v. Wilson, 118 F.3d 228, 236 (4th Cir. 1997) (listing "a substantial tax deficiency" among the elements of a violation of section 7201); Heasley v. United States, 218 F.2d 86, 90 (8th Cir. 1955) ("[T]he offense here is not one requiring exact proof as to the amount of net income evaded but whether or not the defendant attempted to evade a substantial amount of net income tax."). But see United States v. Daniels, 387 F.3d 636, 641 (7th Cir. 2004) ("We take this opportunity to clarify the law in this Circuit: the government need not charge a

substantial tax deficiency to indict or convict under 26 U.S.C. § 7201.").  Despite some courts' references to a "substantiality" requirement, we have found no case in which a defendant avoided conviction because the determined deficiency was too small.  See id. at 641 n.2 ("Defendants conceded at oral argument that no court has held that an insubstantial tax deficiency is not punishable under 26 U.S.C. § 7201."); see also United States v. Cunningham, 723 F.2d 217, 231 (2d Cir. 1983) ("While it is true that at some point a court may as a matter of law find that the liability avoided was insubstantial, the threshold is a low one[.]").

In Parklane Hosiery Co., 439 U.S. at 331, the Supreme Court granted "broad discretion" to trial courts in regard to plaintiffs' attempts to use collateral estoppel offensively, to prevent a defendant from relitigating a claim previously lost to a different claimant.  The Court's determination in that regard was grounded in its recognition that, in many cases, the purposes underlying collateral estoppel would not support its use by plaintiffs.  When the use of collateral estoppel in a tax deficiency case is offensive or defensive is not entirely clear.  In deficiency cases, we have before us not a plaintiff and defendant but a petitioner and respondent.  In Meier v. Commissioner, 91 T.C. 273, 283 n.11 (1988), we suggested that the classification of an attempted use of collateral estoppel in a deficiency case as offensive or defensive should turn on which party has the burden of proof.  Given

the concerns addressed in <u>Parklane Hosiery Co.</u> regarding offensive collateral estoppel, however, we believe it appropriate to treat the use of the doctrine to uphold a deficiency against petitioners as offensive because Mr. Senyszyn was a defendant in his prior criminal case. In any event, we read <u>Parklane Hosiery Co.</u> as standing for a broader principle, that collateral estoppel need not be applied, regardless of the labels that might be affixed to its use, when the purposes of the doctrine do not support its application.

Therefore, we consider whether the purposes of collateral estoppel support applying the doctrine to uphold a deficiency in petitioners' 2003 Federal income tax. We have not previously faced the question of whether a taxpayer's prior conviction for tax evasion requires the determination of a deficiency when the evidence shows that none exists. In <u>Anderson v. Commissioner</u>, 2009 WL 454182, at *19, we rejected the taxpayer's argument that determining the existence of a fraud penalty before determining its amount was premature. We denied the possibility that the taxpayer's underpayment, and thus fraud penalty, might ultimately be determined to be zero. In other words, we surmised that, if presented with the issue we face today, we would find some underpayment, "however

small", by reason of collateral estoppel.  Id.  Obviously, our prior speculation on the question was dictum.[5]

Now confronted with a record that puts squarely before us the question that was merely hypothetical in Anderson, we conclude that the purposes of the doctrine would not be served by upholding a deficiency unsupported by the evidence presented.  Upholding a minimum deficiency would not promote judicial economy:  Even after Mr. Senyszyn's conviction under section 7201, we were required to hear this case to determine the amount of petitioners' deficiency.  And any inconsistency between Mr. Senyszyn's prior criminal conviction and a decision that petitioners are not liable for any deficiency would not undermine "reliance on judicial action", cf. Montana, 440 U.S. at 154, because the inconsistency would result not from conflicting findings by different courts but instead from Mr. Senyszyn's entry of a guilty plea to a charge that the evidence--at least as presented to us--would not support.[6]  Therefore, we decline to apply the

---

[5]Barrow v. Commissioner, T.C. Memo. 2008-264, does not compel application of collateral estoppel to reach a result contrary to the evidence.  In Barrow, we applied the doctrine only to determine, in the face of the Commissioner's failure of proof, the portion of the taxpayer's deficiency attributable to fraud.

[6]Mr. Senyszyn did not explain why he agreed to the stipulation of unreported income for 2003 as part of his plea agreement if, in fact, he repaid to

(continued...)

doctrine of collateral estoppel to uphold whatever minimum deficiency would be consistent with Mr. Senyszyn's conviction under section 7201.[7]

_____

[6](...continued)
Mr. Hook during that year more than he took. Our puzzlement over his motives, however, does not prevent us from concluding, on the basis of a preponderance of the evidence presented to us, that Agent DeGrazio erred in his analysis and that Mr. Senyszyn, at least during 2003, repaid to Mr. Hook more than he misappropriated.

[7]For purposes of our analysis, we have accepted that the conditions of collateral estoppel are present despite the existence of alternative grounds for Mr. Senyszyn's conviction under sec. 7201. Mr. Senyszyn's preparation and filing of a fraudulent return on behalf of MMDI were themselves sufficient grounds to justify his conviction for tax evasion. Although the existence of an underpayment is a necessary element of the offense described in sec. 7201, Sansone v. United States, 380 U.S. 343, 351 (1965), the deficiency need not be that of the defendant, e.g., United States v. Wilson, 118 F.3d 228 (4th Cir. 1997) (evidence of defendant-attorney's efforts to assist client in concealing assets from IRS sufficient to support conviction under sec. 7201). Because Mr. Senyszyn's conviction under sec. 7201 was justified by his preparation and filing of a fraudulent return on behalf of MMDI, the determination that, in addition, he omitted income from his own return could be viewed as having been unnecessary to the conclusion reached in his criminal case. See, e.g., Restatement, Judgments 2d, sec. 27, cmt. i (1982) ("If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone."). The U.S. Court of Appeals for the Third Circuit, however, to which appeal of the present case would lie absent a stipulation to the contrary, see sec. 7482(b)(1)(A), has rejected the position of the Second Restatement and decided to "follow the traditional view that independently sufficient alternative findings should be given preclusive effect", Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 255 (3d Cir. 2006). Even if we disagreed with the Court of Appeals, we would under Golsen v. Commissioner, 54 T.C. 742, 757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971), apply in the present case the traditional view that, when a

(continued...)

V.    Conclusion

For the reasons explained above, we conclude that petitioners are not liable for any deficiency in their Federal income tax for 2003.  The absence of a deficiency renders the remaining issues moot:  The penalties that respondent asserted depend on deficiencies, and the joint and several liability of Mrs. Senyszyn is irrelevant in the absence of a deficiency.

Decision will be entered for petitioners.

---

[7](...continued) prior judgment is based on alternative grounds, each is given preclusive effect against the parties or their privies.